UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| AWILDA RODRIGUEZ | : |
| | : |
| VS. | : CIVIL NO. |
| | : |
| CITY OF HARTFORD | : APRIL 29, 2019 |

## C O M P L A I N T

1. This is an action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, and the Age Discrimination in Employment Act or 1967, 29 U.S.C. §§ 621-634. to redress the deprivation by the defendant of rights secured to the plaintiff by the laws of the United States. The defendant discriminated against the plaintiff in employment on the grounds of her ethnicity and age and retaliated against her for prior complaints of employment discrimination.

2. Jurisdiction of this court is invoked under the provisions of Sections 1331, 1343(3), and 1367(a) of Title 28 and Section 2000e of Title 42 of the United States Code.

3. During all times mentioned in this action, the plaintiff was, and still is, an adult citizen of the United States residing in Hartford, Connecticut. She is an

Hispanic woman of Puerto Rican ancestry and at all relevant times was over the age of 40.

4. During all times mentioned in this action, the defendant was and is a municipal corporation in the State of Connecticut which operated and acted through the Hartford Police Department. It is and at all relevant times was an employer within the meaning of the aforesaid statutes and at all relevant times employed more than one hundred individuals.

5. The plaintiff has complied with all of the procedural prerequisites to suit under the statutes aforementioned, having filed a timely complaint of employment discrimination with the Connecticut Commission on Human Rights and Opportunities and the United States Equal Employment Opportunity Commission and having received a Right to Sue Letter issued by the United States Equal Employment Opportunity Commission on April 16, 2019, and a Release of Jurisdiction issued by the Commission on Human Rights and Opportunities on April 3, 2019.

6. The plaintiff received an Associates Degree in Criminal Justice from Goodwin College.

7. The plaintiff served as an intern in the Crime Scene Division of the Hartford Police Department.

8. On or about October 2, 2015, the plaintiff applied to become a Hartford

police officer. She did not pass the written examination.

9. On or about March 7, 2017, the plaintiff took the police examination a second time. She passed the written portion of the examinatoin and received a 68% score on the oral examination. The passing score is 70%.

10. On or about May 12, 2017, the plaintiff attended a seminar for people wishing to become police officers. At that seminar, the plaintiff spoke with James C. Rovella, who at that time was the Hartford Chief of Police. She explained to Chief Rovella that she had failed the oral exam by two p;oints. They discussed the questions utilized in the oral exam and Chief Rovella stated: "You did very good answering the question but did they tell you something about your accent? I think they didn't pass you because of your accent." Chief Rovella then encouraged the plaintiff to take the exam again.

11. On or about June 1, 2017, the plaintiff again applied to become a Hartford Police Officer and took the exam a third time. She passed the written portion and received a 100% score on the oral examination.

12. On or about October 17, 2017, the plaintiff received a conditional offer of employment as a probationary officer in the Hartford Police Department. The offer was conditioned upon passing the background investigation, polygraph, psychological, medical and physical examinations.

13. On or about December 9, 2017, the plaintiff took a polygraph

examination with Christopher Conley of the Norwich Police Department.

14. During the polygraph examination, Officer Conley's first question was why the plaintiff was applying to the Hartford Police Department at 41 years of age.

15. During the polygraph examination, Officer Conley asked the plaintiff repeated questions about her family.  At the end of the exam, Officer Conley accused the plaintiff of being untruthful and stated that he would make a report to Detective Gogins, the plaintiff's investigator for the Hartford Police Department.

16. On or about December 14, 2017, then former Chief Rovella again made remarks to the plaintiff about her accent in the presence of the new Hartford Police Chief, David Rosado.

17. On or about January 11, 2018, Sergeant Kevin O'Brien of the Hartford Police Department called the plaintiff and informed her that she would have to take another polygraph exam the following day.

18. Lieutenant Paul West of the Hartford Police Department, upon information and belief, asked Sergeant O'Brien why some candidates had to retake the polygraph exam and Sergeant O'Brien replied: "Oh yeah, that old kind of looking woman Awilda Rodriguez, you remember her?  She better come clean, she went to Norwich and lied about her family selling drugs."

19. On or about January 12, 2018, the plaintiff attended a second polygraph examination with James Curtis, a polygraph examiner for the University of Connecticut Police Department.

20. On the day of the second polygraph exam, the plaintiff was suffering from a cold and coughing. She explained her medical problem to Officer Curtis, who asked her to hold her cough until after the exam.

21. During that exam, Officer Curtis repeatedly falsely accused the plaintiff of lying. He stepped out of the room to speak with Sergeant O'Brien and, upon returning, asked the plaintiff questions about her sister and her boyfriend. After nearly five hours of questioning, Officer Curtis falsely accused the plaintiff of manipulating her breating and informed her that after consulting with Sergeant O'Brien she would not be moving forward in the process.

22. On or about March 1, 2018, the plaintiff spoke with Chief Rosado and explained that she felt she was being discriminated against in the hiring process. He told her that he would look into her file and get in touch with her.

23. On or about March 13, 2018, Chief Rosado called the plaintiff and informed her that, after looking into her file, he had decided that she would not be moving forward in the hiring process because she did not pass two polygraph exams. He suggested that she try again and informed her that he felt the questions which had been asked about her family were typical.

24. On or about August 1, 2018, the plaintiff again applied to become a Hartford Police Officer and took another written exam.

25. On or about August 4, 2018, the plaintiff took the physical exam to become a Hartford Police Officer.

26. On or about August 9, 2018, the plaintiff was notified that she had passed the written exam and would be moving on to the oral examination.

27. On or about September 18, 2018, Detective Gogins notified the plaintiff by voicemail that her background interview would take place at 4:00 p.m. that same day. However, upon information and belief, all other candidates in the recruitment process already had been notified by then that they would be moving forward with background interiews.

28. When the plaintiff appeared at Hartford Police Headquarters for her background interview on September 18, 2018, Officer Baerga, the officer who oversees the Hartford Police Department recruitment process, asked the plaintiff why the was there and, upon being told that it was for a background interview, said that did not make sense.

29. The plaintiff's background interview on September 18, 2018, was conducted by Detectives Grogins and Manza. She was the only candidate present for such an interview that day.

30. Prior to September 18, 2018, the plaintiff had filed a complaint owith

the United States Equal Employment Opportunity Commission and the Connecticut Commission on Human Rights and Opportunities alleging that she was being discriminated against in the employment process by the Hartford Police Department. At her background interview on September 18, 2018, Detective Gogins asked her repeatedly about that complaint and asked her to write a statement about her complaint.

31. At the September 18, 2018, interview both detectives asked the plaintiff to bring in information and paperwork which she had submitted in her previous background checks, including originals of her college transcripts, within less than 48 hours.

32. On October 5, 2018, the plaintiff arrived at the New Britain Police Department for her polygraph examination with Sergeant Adam Rembisz. After she had completed her polygraph packet, she was called into the examination room and asked whether she had made a discrimination complaint against the Hartford Police Department. The plaintiff replied that she had done so and then was asked to explain her reasons for having made the complaint. The plaintiff declined to discuss that, stating that she had an attorney handling the matter.

33. Sergeant Rembisz then told the plaintiff that he had a copy of her Norwich polygraph examination and that he knew she had not passed. He said that he needed the plaintiff to be honest and the plaintiff explained that she was

honest at the Norwich polygraph exam. Sergeant Rembisz looked at the plaintiff and said: "That's not the way it works."

34. During his administration of the polygraph exam, Sergeant Rembisz told the plaintiff that the Norwich police report included a statement that she had told the Norwich examiner that her sister sells drugs from a hot dog cart and hides drugs in the cart. The plaintiff denied ever having made such a statement and further stated that she had reported to the Norwich examiner that she only had seen her sister smoke marijuana one time years earlier.

35. Sergeant Rembisz asked the plaintiff when she had last seen her sister. The plaintiff replied that it was about a month earlier, when her sister had placed her hot dog cart in the plaintiff's storage unit. Sergeant Rembisz asked whether the plaintiff had checked to see if there were drugs inside the cart and whether she thought her sister sold drugs. The plaintiff replied that her sister is a hard-working woman who does not sell drugs.

36. At the end of the examination by Sergeant Rembisz, the plaintif was told that she did not pass the exam and that she was concealing information about a crime. Sergeant Rembisz offered to divide the questions into two categories to see what happened. The plaintiff requested another appointment for that purpose but her request was denied.

37. The plaintiff has been denied employment by the Hartford Police

8

Department.

    38. In the manner described above, the defendant:

        A.    Discriminated against the plaintiff in employment upon the basis of her ethnicity;

        B.    Discriminated against the plaintiff in employment upon the basis of her age;

        C.    Retaliated against the plaintiff because of her prior complaints of employment discrimination;

all in violation of the statutes aforesaid.

WHEREFORE, the plaintiff claims judgment against the defendant as follows:

    A. Compensatory damages in an amount this court shall consider to be just, reasonable and fair;

    B. Punitive damages in an amount this court shall consider to be just, reasonable and fair;

    C. Attorney fees and the costs of this action;

    D. A temporary and permanent injunction requiring the defendant forthwith to hire the plaintiff forthwith as a Hartford police officer with full back pay and benefits;

    E. Front pay;

F. Such other relief as this court shall consider to be fair and equitable.

THE PLAINTIFF

BY:_____/s/_____(ct00215)_____
JOHN R. WILLIAMS (ct00215)
51 Elm Street
New Haven, CT 06510
203-562-9931
Fax: 203-776-9494
jrw@johnrwilliams.com