**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| AWILDA RODRIGUEZ | ) | 3:19-CV-00632 (KAD) |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF HARTFORD | ) | |
| *Defendant*. | ) | APRIL 15, 2022 |

<u>**MEMORANDUM OF DECISION**</u>
**RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 27)**

Kari A. Dooley, United States District Judge:

This action arises out of Plaintiff Awilda Rodriguez' application for and denial of employment with the Hartford Police Department ("HPD" or the "Department"). Plaintiff alleges age discrimination against the City of Hartford ("Defendant" or "Hartford") under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634, as well as ethnicity discrimination[1] and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, *et seq.*[2] Pending before the Court is Hartford's motion for summary judgment as to all three claims, which Plaintiff opposes. The Court has considered the parties' memoranda and accompanying exhibits. For the following reasons, the motion for summary judgment is GRANTED in part and DENIED in part.

**Relevant Facts**

The following facts are taken from Defendant's Local Rule 56(a)(1) Statement of Material Facts ("Def. LRS," ECF No. 27-2), the Plaintiff's response thereto ("Pl. LRS," ECF No. 30-1) and

---

[1] Plaintiff uses the word ethnicity to describe the type of discrimination she is alleging. Although "ethnicity" is not explicitly included within the protections of Title VII, race discrimination encompasses ethnicity discrimination for purposes of Title VII. *See Village of Freeport v. Barrella*, 814 F.3d 594, 607 (2d Cir. 2016) (finding that discrimination based on ethnicity, including Hispanicity or lack thereof, constitutes racial discrimination under Title VII).
[2] Plaintiff asserts all three claims in a single count.

the parties' exhibits (ECF No. 29). The facts set forth by the Defendant are admitted by Plaintiff unless otherwise indicated.

Plaintiff is a 45-year-old[3] Hispanic female of Puerto Rican ancestry living in Hartford, Connecticut. Def. LRS at 1 ¶ 2. Plaintiff first applied to a police officer position with HPD, which is a department within the municipal corporation of the City of Hartford, in October of 2015. Def. LRS at 1 ¶ 1. During that application cycle, however, Plaintiff did not pass the required written examination. Def. LRS at 1 ¶ 3. Plaintiff applied again to an officer position with HPD in March of 2017 but did not pass the required oral examination. Def. LRS at 1 ¶ 4. In May of 2017, Plaintiff attended a seminar for those interested in becoming police officers, where she spoke to James Rovella, then-Chief of HPD. *See* Def. LRS at 4 ¶ 20. During that conversation, Plaintiff alleges that Chief Rovella told her, "Maybe they didn't hire you because of your accent. Maybe you didn't pass because of your accent."[4] Pl. Dep., Ex. C at 29, Lines 5–13. In June of 2017, Plaintiff once more applied for an officer position with HPD and passed both the written and oral examinations. Def. LRS at 1–2 ¶ 5. HPD extended a conditional offer of employment as a probationary officer in October of 2017, which hinged on the passing of a background investigation as well as psychological, medical, physical, and polygraph examinations.[5] Def. LRS at 2 ¶ 6.

---

[3] During all the events alleged in the Complaint relating to the age discrimination claim, Plaintiff was at least 40 years old.

[4] There is an apparent dispute as to whether Chief Rovella's alleged comment about Plaintiff's accent referred to her failed oral examination or a failed polygraph examination. For purposes of this decision, whether the comment was made about an oral examination or polygraph examination is immaterial, as failing either would prohibit her from being hired.

[5] Plaintiff argues that the requirement is only that the applicant be administered a polygraph examination, not as Hartford contends, that she must pass it. *See* Def. LRS at 5–6 ¶ 26; Pl. LRS. at 3 ¶ 28. However, in her Complaint, Plaintiff admitted that she "received a conditional offer of employment as a probationary police officer with the City of Hartford" and that the "offer was conditioned upon passing the background investigation, polygraph, psychological, medical and physical examinations." Compl. at 3 ¶ 12. This is a binding judicial admission. *Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528 (2d Cir. 1985) ("A party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding."). Notably, Plaintiff included this same admission in her materials submitted to the Commission on Human Rights and Opportunities ("CHRO"), attached to Defendant's motion as Exhibit B, and in her deposition testimony. CHRO Materials, Ex. B at 3 ¶ 7; Pl. Dep., Ex. C at 53 Lines 15–18.

In December of 2017, Plaintiff took a polygraph examination, which was conducted by Christopher Conley of the Norwich Police Department. Def. LRS at 2 ¶ 10. No members of HPD were present at this polygraph examination. Def. LRS at 2 ¶ 11. Before the examination began, Conley posed to Plaintiff, "Why [do] you want to become a police officer at the age of 40?[6] Why now?" Def. LRS at 2 ¶ 10; Pl. Dep., Ex. C at 21, Lines 3–5. During the examination, Conley asked Plaintiff questions about her family. Def. LRS at 2 ¶ 12. Plaintiff alleges that during the examination, Conley asked her specifically if her sister was selling drugs and whether her sister was hiding drugs in Plaintiff's storage unit. Pl. LRS at 4 ¶ 1. Defendant, however, states that during the post-test interview, Plaintiff allegedly told Conley that she had heard from unidentified sources that her sister sold drugs from a hot dog cart in Hartford but that she could not be sure whether that was true. Def. LRS at 3 ¶ 14. Plaintiff denies that she told the examiner that her sister sells drugs from her hot dog cart or that she hides drugs there. CHRO Materials, Ex. B at 7 ¶ 38–39. HPD determined that Plaintiff did not pass the polygraph examination due to deception in the area of drug involvement, a result the Plaintiff challenges. Def. LRS at 3 ¶ 13; Pl. LRS at 2 ¶ 13.

Because Plaintiff was told she failed the first examination, Plaintiff took a second polygraph examination in January of 2018, which was conducted by James Curtis of the University of Connecticut Police Department. Def. LRS at 3 ¶ 15–16. The second examination took place at the HPD complex and Sergeant Kevin O'Brien escorted Plaintiff to the examination room.[7] *Id*. In response to one of the pre-test questions inquiring whether anyone the examinee knew was involved with the use, sale, manufacture or distribution of illegal drugs, Plaintiff answered "yes"[8]

---

[6] There is factual inconsistency in the record as to whether Conley said, "age of 40" or "age of 41." For purposes of the Court's analysis, the difference between 40 and 41 is immaterial.
[7] Sergeant O'Brien's further involvement—if any—in the administration of the polygraph is disputed. Pl. LRS at 2 ¶ 15. Plaintiff testified that Curtis went to speak with Sergeant O'Brien at the conclusion of the examination, and that based on that conversation, the Plaintiff did not move forward in the hiring process. Pl. Dep., Ex. C at 37, Lines 7–14.
[8] During the Norwich polygraph examination, Plaintiff had answered "no" to this same pre-test question. Def. LRS at 3 ¶ 17.

and allegedly disclosed that she had heard rumors about her sister selling drugs from her hot dog cart but that she had never witnessed it. Def. LRS at 3 ¶ 17. Plaintiff denies providing this information to Curtis but admits that she was instructed to answer "yes" because she disclosed that she witnessed her sister smoking once about ten years earlier. Pl. LRS at 4–5 ¶ 2. HPD determined once again that Plaintiff failed the polygraph examination due to deception in the area of involvement with illegal drugs. Def. LRS at 4 ¶ 18. Plaintiff maintains that she was truthful throughout the examination, so she did not, in fact, fail the polygraph examination. Pl. LRS at 2 ¶ 18. Further, Plaintiff alleges "upon information and belief" that before the examination started, Sergeant O'Brien referred to Plaintiff as "that old kind of looking woman" and explained that she "went to Norwich and lied about her family selling drugs" in a conversation with a Lieutenant. CHRO Materials, Ex. B at 4 ¶ 13.

In March of 2018, Plaintiff spoke with the then-current Chief of HPD, David Rosado, to complain about discrimination in the hiring process. Def. LRS at 5 ¶ 24. Chief Rosado told Plaintiff that he would investigate the matter and get back to her. *Id.* Later that month, Chief Rosado informed Plaintiff that she would not be progressing in the hiring process due to her failed polygraph examinations and that questions about family members were typical during the examination. *Id.* Chief Rosado encouraged Plaintiff to apply again. *Id.* Plaintiff filed a formal complaint with the CHRO in May of 2018.[9] Def. LRS at 5 ¶ 25. After proceeding to fact-finding, CHRO released jurisdiction over the complaint. *Id.*

Nevertheless, Plaintiff reapplied to HPD in August of 2018. Pl. Dep., Ex. C at 40, Lines 14–24. During this application cycle, HPD informed Plaintiff on the morning of September 18, 2018 that a background check would be held at 4:00 P.M. later that same day. Def. LRS at 4 ¶ 22.

---

[9] Plaintiff amended her initial complaint to CHRO in November of 2018. Def. LRS at 5 ¶ 25.

Thus, HPD gave Plaintiff less than 48 hours to supply all the necessary documentation prior to the background check. *Id.* Plaintiff took a third polygraph examination in October of 2018, conducted by Adam Rembisz of the New Britain Police Department. Def. LRS at 4 ¶ 19. HPD determined that Plaintiff did not pass this examination because she showed deception with respect to her involvement with serious crimes, which Plaintiff denies. Def. LRS at 4 ¶ 19; Pl. LRS at 2 ¶ 29. Plaintiff alleges that at this examination, she was asked about her filing of a discrimination complaint against HPD and was again accused of lying about her sister selling drugs. Pl. LRS at 6 ¶ 7. Plaintiff maintains that Officer Baerga, the HPD Recruitment Officer, told her that the Department's treatment of her at the Norwich polygraph examination was discriminatory and that finding that applicants have lied on a polygraph is a way HPD rejects minority applicants. Pl. LRS at 6–7 ¶¶ 10, 14; Pl. Dep., Ex. C at 60, Lines 14–16. Plaintiff filed the instant lawsuit in April of 2019. *See* Compl., ECF No 1.

**Standard of Review**

The standard under which the Court reviews motions for summary judgment is well-established. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact is one that 'might affect the outcome of the suit under the governing law' and as to which 'a reasonable jury could return a verdict for the nonmoving party.'" *Noll v. Int'l Bus. Machines Corp.*, 787 F.3d 89, 94 (2d Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The inquiry conducted by the Court when reviewing a motion for summary judgment focuses on "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably

be resolved in favor of either party." *Anderson*, 477 U.S. at 250. Accordingly, the moving party satisfies its burden under Rule 56 "by showing . . . that there is an absence of evidence to support the nonmoving party's case." *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (*per curiam*) (quotation marks and citations omitted). Once the movant meets its burden, "[t]he nonmoving party must set forth specific facts showing that there is a genuine issue for trial." *Irizarry v. Catsimatidis*, 722 F.3d 99, 103 n.2 (2d Cir. 2013) (quoting *Rubens v. Mason*, 527 F.3d 252, 254 (2d Cir. 2008)). "[T]he party opposing summary judgment may not merely rest on the allegations or denials of his pleading" to establish a disputed fact. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "[M]ere speculation or conjecture as to the true nature of the facts" will not suffice. *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted). The standard thus requires "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249.

In assessing the presence or absence of a genuine dispute as to a material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (*per curiam*) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)). "In deciding a motion for summary judgment, the district court's function is not to weigh the evidence or resolve issues of fact; it is confined to deciding whether a rational juror could find in favor of the non-moving party." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 254 (2d Cir. 2002).

**Discussion**

*Age Discrimination*

"Under the ADEA, it is 'unlawful for an employer…to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions,

or privileges of employment, because of such individual's age [or] to limit, segregate, or classify

his employees in any way which would deprive or tend to deprive any individual of employment

opportunities or otherwise adversely affect his status as an employee, because of such individual's

age[.]'" *Mendillo v. Prudential Ins. Co. of Am.*, 156 F. Supp. 3d 317, 337 (D. Conn. 2016) (quoting

29 U.S.C. § 623(a)).

"In the Second Circuit, ADEA discrimination claims are analyzed using the burden-

shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817,

36 L.Ed.2d 668 (1973), as modified by *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 129 S. Ct.

2343, 174 L.Ed.2d 119 (2009)." *Mendillo*, 156 F. Supp. 3d at 337–38. Under *McDonnell*

*Douglas,* the plaintiff bears the initial burden of establishing a prima facie case of discrimination.

411 U.S. at 802. To set forth a prima facie case of age discrimination, Plaintiff "must show (1) that

[she] was within the protected age group, (2) that [she] was qualified for the position, (3) that [she]

experienced adverse employment action, and (4) that such action occurred under circumstances

giving rise to an inference of discrimination." *Mendillo*, 156 F. Supp. 3d at 338 (quoting *Gorzynski*

*v. JetBlue Airways Corp.*, 596 F.3d 93, 107 (2d Cir. 2010)). The Plaintiff's burden at this stage is

"de minimis." *Id.*

> Once this burden is met, the defendant must then articulate 'some legitimate,
> nondiscriminatory reason' for its action. The defendant need not persuade the court that it
> was actually motivated by the proffered reason. It is sufficient if the defendant's evidence
> raises a genuine issue of fact as to whether it discriminated against the plaintiff. When the
> employer meets its burden, the plaintiff can no longer rely on the prima facie case, but must
> prove that the employer's proffered reason was a pretext for discrimination[.] Since the
> Supreme Court's decision in *Gross*…, eliminating the mixed-motive analysis as to ADEA
> claims, a plaintiff bringing a disparate-treatment claim pursuant to the ADEA satisfies this
> burden by presenting facts, which taken in his favor, suffice to show that a triable issue
> exists as to whether his age was a 'but for' cause of his termination.

*Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 168 (2d Cir. 2014) (internal citations, quotation

marks, ellipses, and alterations omitted).

Here, the parties do not dispute that Plaintiff is in the protected age group. And it is well-established that a failure to hire is considered an adverse employment action. *McKinney v. Dep't of Transp.,* 168 F. Supp. 3d 416, 423 ("[a]dverse employment actions include…refusal to hire") (citing *Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir. 1999) (abrogated on other grounds)). The dispute here is whether Plaintiff was qualified for a police officer position with HPD and whether she experienced the adverse employment action under circumstances that give rise to an inference of discrimination.

Defendant relies principally on Plaintiff's failed polygraph examinations to defeat her discrimination claims. Hartford argues that Plaintiff was not qualified for the position because of the failures, which is a legitimate non-discriminatory reason for not hiring her. Hartford also argues that even if there is a genuine factual dispute as to whether Plaintiff was qualified, she has not provided any facts or circumstances that give rise to an inference of age discrimination. In response, Plaintiff attests she was qualified for the officer position because she should not have failed the polygraph examinations, as she was completely honest during their administration. And furthermore, that the polygraph examinations are administered in a discriminatory fashion, and the reported "failures" are merely pretext for HPD's discriminatory intent.

The Court finds that whether Plaintiff did in fact fail the polygraph examinations presents a genuine issue of material fact. She testified that she was always truthful in answering the questions, and for one examination she alleges she was ill.[10] She challenges the content of the examination reports finding her deceptive. Hartford offers only the reports themselves. The Court

---

[10] Plaintiff alleges that during her second polygraph examination with Curtis, she was suffering from "a cold and coughing." CHRO Materials, Ex. B. at 4–5 ¶ 17. When Plaintiff told Curtis about how she felt, he asked her to hold her cough and only cough once the examination was over. *See id.*

has no testimony, affidavits or other evidence which might resolve this impasse.[11] Accordingly, whether Plaintiff was qualified for the police officer position or whether the purported failure of the polygraph examinations is a legitimate non-discriminatory reason to not hire her cannot be resolved on this record. Notwithstanding, the Court agrees with the Defendant that there is insufficient evidence which might give rise to an inference of age discrimination.

The only evidence[12] Plaintiff cites to in support of her age discrimination claim is her testimony that when she met with Officer Conley for the first polygraph examination, he asked her, "Why [do] you want to become a police officer at the age of 40? Why now?" Pl. Dep., Ex. C at 21, Lines 3–5. Although Plaintiff's burden to create a prima facie case is *de minimis,* the burden is not met here. Even accepted as true, and Defendant offers no counterevidence, Officer Conley's inquiry at the time of the polygraph examination does not create any inference that HPD discriminated against Plaintiff due to her age. First, Officer Conley does not work for HPD and Plaintiff testified during her deposition that Officer Conley explicitly told her that Detective Gogins, a detective employed by HPD, made the final decision on the results of the polygraph. Pl. Dep., Ex. C at 19, Lines 6–15. Plaintiff further admitted that no representatives of HPD were even

---

[11] The Defendant relies on Plaintiff's failure to conduct discovery when arguing a dearth of evidence to support Plaintiff's claims. But Plaintiff's failure to conduct discovery does not relieve the Defendant of its obligation to present the Court with sufficient evidence to establish that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment *if the movant shows* that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.") (emphasis added). Defendant submitted neither testimony nor affidavits from HPD officers involved in Plaintiff's application, the polygraph examiners, Chief Rovella, or Chief Rosado. Nor has the Defendant offered evidence as to the Department's hiring procedures, including affidavits from those with decision-making authority within HPD. Inexplicably, the Defendant relies almost entirely upon the Plaintiff's Complaint, CHRO submissions, deposition testimony and the exhibits marked during the Plaintiff's deposition. And some of these documents are not authenticated nor supported with foundational testimony, i.e., HPD's hiring statistics. Defendant also attaches the HPD recruiting website and a copy of the POST standards for police officer certification—neither of which is supported by foundational testimony or affidavit. *See* ECF No. 29.

[12] Plaintiff, "upon information and belief," does allege that Sergeant O'Brien, an employee of HPD, referred to her as "that old kind of looking woman" in a conversation with Lieutenant West, also an employee of HPD, prior to her second polygraph examination. CHRO Materials, Ex. B at 4 ¶ 13. Nevertheless, she cites to no record evidence as the basis for her "information and belief" and offers no affidavit based upon personal knowledge that such a statement was made. *See* FRCP Rule 56(c)(4) (Affidavits used to oppose a motion for summary judgment "must be made on personal knowledge.")

present in Norwich, let alone in the room during the polygraph administration. Pl. Dep., Ex. C at 21, Lines 17–24. And there is no suggestion in the record evidence that Officer Conley had any role in the decision not to hire Plaintiff. But even if Officer Conley's remark might be attributable to HPD, this single isolated inquiry cannot support an inference of discriminatory intent. *See Tomassi v. Insignia Fin. Group, Inc.*, 498 F.3d 111, 114 (2d Cir. 2007) ("[R]emarks made by someone other than the person who made the decision adversely affecting the plaintiff may have little tendency to show that the decision-maker was motivated by the discriminatory sentiment expressed in the remark."); *see also Cardona v. Willimantic Housing Authority*, No. 3:19-cv-00235 (MPS), 2021 WL 849020, at *12 (D. Conn. Mar. 5, 2021) (finding that stray remarks, particularly those made by persons without hiring authority, do not establish discriminatory intent of the employer).

This leaves only Plaintiff's conclusory allegations of age discrimination which do not satisfy Plaintiff's burden, even at the prima facie stage. *See Lipton v. Nature Co.*, 71 F.3d 464, 469 (2d Cir. 1995). Accordingly, Officer Conley's question as to why Plaintiff wanted to be a police officer at age 40 does not give rise to an inference of age discrimination and the motion for summary judgment is granted as to the ADEA claim.

*Ethnicity Discrimination*

"Title VII makes it 'an unlawful employment practice for an employer…to fail or refuse to hire or to discharge…or otherwise to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's…race.'" *Christiansen v. Omnicom Grp., Inc.*, 852 F.3d 195, 199 (2d Cir. 2017) (quoting 42 U.S.C. § 2000e-2(a)(1)). Like the framework under the ADEA, the Supreme Court adopted a three-stage, burden-shifting framework for analyzing employment discrimination cases

under Title VII. *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 82 (2d Cir. 2015). In a failure to hire case, a plaintiff makes a prima facie case by showing that "(1) [s]he is a member of a protected class, (2) [s]he was qualified for the job for which [s]he applied, (3) [s]he was denied the job, and (4) the denial occurred under circumstances that give rise to an inference of invidious discrimination." *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010). If this *de minimis* burden is met, the defendant must present a legitimate non-discriminatory reason for not hiring the plaintiff. *See McDonnell*, 411 U.S. at 802. The burden then shifts back to the Plaintiff to establish that the proffered reason is pretextual. *Id.*[13]

Again, the Defendant relies upon the failed polygraph examinations as conclusive evidence that Plaintiff was not qualified for the position and/or that they provide a legitimate non-discriminatory reason not to hire her. As discussed above, there is a genuine dispute as to whether the Plaintiff in fact failed the polygraph examinations, an issue clearly material to Hartford's defenses. The next question then is whether there is sufficient evidence for a jury to decide that the decision not to hire the Plaintiff occurred under circumstances giving rise to an inference of racially discriminatory intent. The Court answers this inquiry in the affirmative.

In support of her allegation of racially discriminatory intent, Plaintiff first cites to her testimony wherein she stated that on two separate occasions, (now) former-Chief Rovella suggested her accent might be the reason she was having difficulty in the hiring process. She testified that Chief Rovella, upon learning that she had not passed the oral examination in 2017,

---

[13] Unlike the Plaintiff's burden under the ADEA, where a plaintiff must meet the defendant's proffer with evidence that age discrimination was the "but for" cause of the adverse employment action, a plaintiff bringing a Title VII claim must only establish that the defendant had a "mixed motive" in rendering the decision not to hire, that is, discrimination was one of the reasons motivating the decision. *See Gross v. FBL Financial Servs., Inc.,* 577 U.S. 167, 175 ("Unlike Title VII, the ADEA's text does not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor."); *see also Lenzi v. Systemax, Inc.,* 944 F.3d 97, 108 (2d Cir. 2019) ("An employee need only show that [race] 'was a motivating factor for any employment practice, even though other factors also motivated the practice.'") (citing 42 U.S.C. § 2000e-2(m)).

told her that it appeared she had answered the questions quite well and opined that she did not pass or was not hired because of her accent. Pl. Dep., Ex. C. at 29, Lines 11–13.[14] She also testified that in 2018, she expressed to then-Chief Rosado that she had concerns regarding discriminatory hiring practices. When she did so, Rovella was present and stated to Rosado, "Oh, you know that she want to become a police officer, but she's been having problems because of her accent." Pl. Dep., Ex. C. at 28, Lines 13–15.

Additionally, Plaintiff provides screenshots of text messages she exchanged with Officer Baerga, a recruitment official for HPD, in which Baerga reveals that failed polygraphs are a way that the Department "get[s] rid of minority applicants." Pl. Messages., Ex. D. at 17. The texts read: "If you are telling the truth there should be no reason why he didn't pass you" and "You push to get in. Don't let this guy get away with that. That's the way they get rid of minority applicants." Pl. Messages, Ex. D. at 16. Plaintiff lastly points to the unusual and rushed way her third application was handled, making it much more onerous because she had little time to complete the necessary tasks.

Defendant responds that Chief Rovella's comments are stray remarks that do not have bearing on Plaintiff's polygraph examination results and, further, that he had no hiring authority. As to Officer Baerga's texts, Defendant summarily asserts, without citation to authority or any analysis, that the Court cannot consider them because they are inadmissible hearsay. Specifically, the Defendant claims that Plaintiff has not established any nexus between Chief Rovella and Plaintiff's advancement in the hiring process nor does she allege that Chief Rovella had any

---

[14] In her Affidavit submitted to the CHRO, Plaintiff avers that when discussing the oral examination with Chief Rovella, he said, "You did very good answering the question but did they tell you something about your accent? I think they didn't pass you because of your accent." CHRO Materials, Ex. B at 3 ¶ 5.

decision-making authority. Hartford further asserts that because Chief Rovella's comments are at best stray remarks, they cannot support an inference of discrimination. The Court disagrees.

First, the Defendant bears the initial burden of establishing that it is entitled to judgment as a matter of law. Plaintiff has no obligation until the Defendant has met that burden. And defendant has submitted no evidence from HPD personnel to explain the hiring process and the Chief's role, if any, in that process. Next, District courts in this Circuit generally examine four factors when assessing whether isolated "stray remarks" are probative of discriminatory intent: "(1) who made the remark (i.e., a decision-maker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (i.e., whether it was related to the decision-making process)." *Henry v. Wyeth Pharmaceuticals, Inc.*, 616 F.3d 124, 149 (2d Cir. 2010). Although the Court does not have any evidence as to Chief Rovella's role in the hiring process, the Court easily concludes that the other three factors affirmatively support an inference of discriminatory intent in the decision not to hire the Plaintiff. Notwithstanding the lack of affirmative evidence, the Court observes that where the highest-ranking member of HPD directly opines that an applicant is not being hired based upon a discriminatory sentiment about her accent close in time to the application cycle, the comment is likely not a stray remark. At the very least, under these circumstances, whether Chief Rovella's remarks are probative of discriminatory is a question of fact, not of law.

As discussed above, Plaintiff also cites to text messages from Officer Baerga, a recruitment officer for HPD, which the Defendant summarily dismisses as inadmissible hearsay. Again, the Court has an insufficient record to make this determination. While the text messages appear on their face to be out of court statements which are being offered for their truth, it is unclear whether

13

Officer Baerga's statements would be considered the statements of a party opponent under Federal Rule of Evidence 801(d)(2), which would not be hearsay. An opposing party statement is: (1) made by the party in an individual or representative capacity; (2) believed to be true; (3) made by a person whom the party authorized to make a statement on the subject; (4) and made by the party's agent or employee on a matter within the scope of that relationship and while it existed. *See* Fed. R. Evid. 801(d)(2). Because the Defendant has not submitted any affidavits or other evidence that establish the statements are hearsay, they might not be hearsay at all. And as the Court cannot ascertain on this record whether they are, it cannot disregard their import to Plaintiff's case. Considered among the body of record evidence, the texts further support an inference of discriminatory intent. *See Kaytor v. Electric Boat Corp.*, 60 F.3d 537, 545 (2nd Cir. 2010) (finding that summary judgment is inappropriate when the "admissible materials in the record make it arguable that the claim has merit") (internal quotation marks and citations omitted).

Finally, to refute an inference of any type of discrimination, Defendant offers statistics to demonstrate that ethnicity and age are irrelevant considerations in HPD's hiring process: (1) 35% of applicants in the 2018 recruiting class were rejected due to a failed polygraph, many of whom were non-Hispanic, and (2) of 22 candidates deemed acceptable, almost one third were Hispanic.[15] *See* Ex. F. And as noted above, these statistics are not authenticated nor has the Defendant presented foundational testimony which would make them admissible and appropriate for consideration. *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."); *see also*

---

[15] These statistics do not shed light on *why* certain applicants, including Plaintiff, failed polygraph examinations while others were deemed acceptable. Nor does Hartford provide any specific details on how polygraph examinations are administered more generally.

*DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (finding that when a party establishes facts through affidavits or deposition testimony, statements made therein must comply with Fed. R. Civ. P. 56(c)(4)).

Further, even if considered, while this data may be probative in Defendant's case at trial, it does not do enough to defeat Plaintiff's central claim in opposition to summary judgment—that HPD incorrectly determined that she failed her polygraph examinations and otherwise administered those examinations in a dishonest fashion in order to weed her out as a minority applicant. Accordingly, the motion for summary judgment as to Plaintiff's Title VII claim that she was discriminated against in the hiring process due to her race is denied.

*Retaliation*

Lastly, Plaintiff alleges that HPD retaliated against her for filing a complaint against the Department with the CHRO. Title VII makes it "an unlawful employment practice for an employer to discriminate against any of his employees…because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 41 U.S.C. § 2000e-3(a). Like discrimination claims pursuant to Title VII, retaliation claims are analyzed using the *McDonnell Douglas* burden-shifting framework. *See Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010). To establish a prima facie case of retaliation, a plaintiff must show: (1) participation in a protected activity; (2) defendant's knowledge of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action. *See id.* at 844 (citation omitted). Again, the plaintiff's burden at the first step is *de minimis* and "the court's role in evaluating a summary judgment request is to determine only whether proffered admissible evidence would be sufficient to permit

a rational finder of fact to infer a retaliatory motive." *Id.* at 164 (quoting *Jute v. Hamilton Sundstrand Corp.,* 420 F.3d 166, 173 (2d Cir. 2005) (internal quotation marks omitted); *see also Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994) (holding that where direct evidence of an employer's retaliatory intent is absent, district courts must scrutinize the available evidence for circumstantial proof).

Here, the parties only dispute the fourth requirement of establishing a prima facie case of retaliation—whether there is a causal connection between Plaintiff's complaint to CHRO and HPD's refusal to hire her.[16] Plaintiff cites to multiple facts which create the necessary nexus between the protected activity and the adverse employment action. First, HPD provided Plaintiff with around five hours of notice in scheduling her background check in September of 2018, which Plaintiff alleges is less notice than HPD provided to other candidates and was less than she received in her previous application cycles. Additionally, HPD provided Plaintiff with less than 48 hours of notice to supply requested documents as part of her background check. Further, during the September 2018 background check, the investigator inquired about Plaintiff's CHRO complaint and asked her to write a statement about the complaint.[17]

In response, Defendant erroneously assumes that the adverse employment action is the failed polygraph examination as opposed to the decision not to hire her. Relatedly, Defendant argues that the fact that she moved on to the polygraph examination even after the investigator asked her about the CHRO complaint rebuts any inference of retaliation.[18] The Court disagrees.

---

[16] The Defendant identifies the adverse employment action at issue as "the failed polygraph examination conducted by an examiner in the New Britain Police Department." Def. Mot. at 16, ECF No. 27. However, the Plaintiff's Complaint clearly alleges that the denial of employment with HPD was the adverse employment action she suffered because of retaliation. Therefore, the Court accepts the failure to hire as the adverse action.

[17] The fact that Plaintiff was asked about her CRHO complaint during the background interview is not in dispute, but Plaintiff alleges that the investigator "repeatedly" asked her about the CHRO complaint. CHRO Materials, Ex. B at 6 ¶ 31.

[18] The polygraph examination is the next step in the hiring process after the background check. *See* Def. Mot. at 16, ECF No. 27. Notably, Plaintiff alleges that during her third polygraph examination on October 5, 2018, Lieutenant

Plaintiff is not alleging that her protected activity prevented her from passing or taking a polygraph examination—she alleges that her protected activity prevented her from securing employment.[19] She filed the CHRO complaint in May of 2018. She applied to be a police officer just a few months later in August of 2018. She testified that the process was hurried and difficult—different from her prior application cycles and different from other applicants' experiences.[20] She was asked during the background investigation and the polygraph examination about the CHRO complaint. She was asked to make a statement regarding the complaint. And on the same day as that polygraph examination, she was told she had failed. While the Defendants disagree with the inferences to be drawn from this evidence, a genuine issue of material fact remains on the issue of retaliatory motive. Therefore, the motion for summary judgment as to Plaintiff's Title VII retaliation claim is denied.

**Conclusion**

For the foregoing reasons, the City of Hartford's motion for summary judgment is GRANTED as to the ADEA claim and DENIED as to both Title VII claims.

**SO ORDERED** at Bridgeport, Connecticut, this 15th day of April 2022.

_/s/ Kari A. Dooley_
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE

---

Adam Rembisz of the New Britain Police Department also inquired about the CHRO complaint. CHRO Materials, Ex. B at 7 ¶ 36.

[19] Consequently, Defendant's misidentification of the adverse action results in its failure to respond to Plaintiff's allegation that being required to write a statement about her CRHO complaint was part of the retaliation. Because HPD argues that the information discovered in the background check did not prevent Plaintiff from proceeding in the hiring process, being asked to write the statement created no adverse impact. In reference to the statement, Defendant states that it is "unclear from the record evidence…as to why this was required." Def. Mot. at 16, ECF No. 27.

[20] Plaintiff specifically testified that on the day of her background interview, Officer Baerga asked her what she was doing at the station because "they already did the background" and they "already got the list of people who complete[d] the background." Pl. Dep., Ex. C at 63–64, Lines 19–2. The fact that Plaintiff was the only applicant undergoing a background check on September 18, 2018 is not in dispute. Def. LRS at 4 ¶ 22. Moreover, Plaintiff testified that in previous application cycles, she had two weeks to gather the necessary background check materials whereas in the September 2018 cycle, she had 48 hours. Pl. Dep., Ex. C at 64, Lines 21–24.